**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| David Bowlin, as administrator on behalf of ANCEL BOWLIN, <br><br> Plaintiff, <br><br> v. <br><br> HELEN OF TROY LIMITED, and IDELLE LABS, LTD.; <br><br> Defendants. | Case No. ___-cv-___ <br><br> **CIVIL COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff David Bowlin, as administrator on behalf of Ancel Bowlin ("Plaintiff"), by and through his attorneys, brings this Complaint against, HELEN OF TROY LIMITED, and IDELLE LABS, LTD. (collectively "Defendants"), and allege upon personal knowledge as to themselves and their own acts and experiences and upon information and belief as follows:

**NATURE OF THE CASE**

1. This is a civil action brought by Plaintiff who, as a longtime user of Sure products, purchased Sure Unscented Antiperspirant Aerosol Deodorant, 6 oz, UPC 00883484002278 (the "Sure Antiperspirant", "Product") from Defendants for normal, household use.

2. The Product is defective because it contained the chemical benzene, a known carcinogen that offers no therapeutic deodorant or antiperspirant benefit.

3. As the Product is defective, the Product was subject to a recall announced on February 16,

1

2022.[1]

4. The Sure brand was created by Procter & Gamble in or around 1972 as a personal care brand for men and women.

5. Up until June 7, 2021, Product was owned and distributed by Defendant Helen of Troy Limited.

6. Defendants took advantage of the trust consumers have in Sure brands, built over several decades, representing that the Product was safe for their intended use when, in reality, the Product contained significant concentrations of benzene, a harmful carcinogen (the "Defect").

7. Benzene is a carcinogen known to cause cancer in humans. Long-term exposure additionally causes harmful effects on the bone marrow, a decrease in red blood cells leading to anemia, and excessive bleeding that can affect the immune system, leading to an increased chance of infection. According to FDA guidance, there is no safe level of exposure to benzene, and thus it "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its]; unacceptable toxicity." FDA, Q3C – 2017 Tables and List Guidance for Industry; https://www.fda.gov/media/71737/download. FDA guidance provides that "if [benzene's] use is unavoidable in order to produce a drug product with a significant therapeutic advance, then [its] levels should be restricted" to 2 parts per million ("ppm"). *Id.*

8. The use of benzene in the Product is demonstrably avoidable. Feasible alternative formulations, designs, and materials were available to Defendants at the time they formulated, designed, and manufactured the Product. Critically, such alternative formulations and designs were and are used by other manufacturers to produce and sell non-defective spray deodorants and antiperspirants. In any event, the Product has a benzene concentration far above the FDA

---

[1] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/tcp-hot-acquisition-llc-dba-hrb-brands-issues-voluntary-nationwide-recall-sure-and-brut-aerosol

concentration limit of 2 ppm.

9. The Product's benzene contamination was not disclosed to the consumer on the product label, the ingredients list, or otherwise.

10. Plaintiff seeks damages and equitable remedies for himself.

## PARTIES

11. Plaintiff Ancel Bowlin was a resident and citizen of New York City, NY who purchased and used Sure Antiperspirant from 2005 up until roughly October 2020.

12. Plaintiff Ancel Bowlin is deceased and Plaintiff's brother, David Bowlin, has been appointed as administrator of Plaintiff's estate.

13. Defendant, Helen of Troy Limited ("Helen of Troy") is a publicly traded, multinational consumer goods company with headquarters in El Paso, Texas and has a diversified portfolio of well-recognized and widely trusted brands.

14. Defendant, Idelle Labs, Limited ("Idelle Labs") is a privately held, wholly-owned subsidiary of Helen of Troy Limited with headquarters in El Paso, Texas.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because: (1) Plaintiff and Defendants are citizens of different states and (ii) the aggregate amount in controversy exceeds $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

16. This Court has personal jurisdiction over Defendants because they have substantial aggregate contacts with this District, including engaging in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and because they purposely availed themselves of the laws of the United States

and New York, including in this District, and/or has caused its products to be disseminated in this District.

17. Venue in this district is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff Ancel Bowlin resides in this District, a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendants transact business in this District, and have intentionally availed itself of the laws and markets within this District.

## **FACTUAL ALLEGATIONS**

18. The Sure Brand was created by Procter & Gamble in or around 1972 as a personal care brand for men and women. Defendant, Helen of Troy Limited acquired Sure in 2010. Since its 2010 acquisition, up until June 7, 2021, Sure was marketed and sold as an antiperspirant deodorant by Helen of Troy.

19. Sure Antiperspirant was distributed by Defendant, Idelle Labs Ltd., a division of Defendant, Helen of Troy.

20. Defendants' Sure product line, including Sure Antiperspirant, was manufactured, distributed, and sold throughout the United States, including the State of New York.

21. Deodorant is a product applied to the body to prevent or mask the odor of perspiration. Antiperspirants, a subclass of deodorants, prevent sweat glands from producing sweat. The product is both deodorant and antiperspirant applied to the body as a spray.

22. The U.S. Food and Drug Administration ("FDA") classifies and regulates most deodorants, including the Product, as cosmetics. In addition, the FDA classifies and regulates antiperspirants, including the Product, as a drug.

23. On November 3, 2021, Valisure, an analytical pharmacy and consumer protection organization, petitioned the FDA to address the dangerous levels of benzene in the Product, as well

as in other deodorants and antiperspirants based upon rigorous testing the organization had conducted for several spray deodorant and antiperspirant products.[2] The next day, Valisure released the results of these tests.[3]

24. In testing, Valisure found average concentrations of benzene above the FDA concentration limit of 2 ppm in spray deodorants, including the Product, which at the time were manufactured and sold by Defendants. This testing revealed that the Sure Antiperspirant exceeded the FDA concentration limit for benzene.

25. The carcinogenic properties of benzene are well documented, as noted by the Centers for Disease Control and Prevention ("CDC"). *See* CDC, Facts About Benzene (2018), https://emergency.cdc.gov/agent/benzene/basics/facts.asp.

26. The U.S. Department of Health and Human Services ("DHHS") has determined that benzene causes cancer in humans. Exposure to benzene can cause leukemia.

27. Long-term exposure to benzene additionally causes harmful effects on the bone marrow and can cause a decrease in red blood cells, leading to anemia. It can also cause excessive bleeding and can affect the immune system, increasing the chance for infection.

28. Due to these significant health risks, the World Health Organization and the international Agency for Research on Cancer classify benzene as a Group 1 compound that is "carcinogenic to humans."[4]

29. The FDA classifies Benzene as a Class 1 solvent.[5] According to FDA guidance: Solvents in Class 1 should not be employed in the manufacture of drug substances, excipients, and drug

---

[2] https://www.valisure.com/valisure-newsroom/valisure-detects-benzene-in-body-spray-products
[3] https://assets-global.website-files.com/6215052733f8bb8fea016220/626af96f521a0584e70e50eb_Valisure%20FDA%20Citizen%20Petition%20on%20Body%20Spray%20v4.0%5B260%5D.pdf
[4] https://cdn.who.int/media/docs/default-source/wash-documents/water-safety-and-quality/chemical-fact-sheets-2022/benzene-fact-sheet-2022.pdf?sfvrsn=cf3ba277_1&download=true
[5] https://www.fda.gov/media/71737/download

products, because of their unacceptable toxicity or their deleterious environmental effect. [6]

30. The FDA concentration limit for benzene is 2 ppm.[7]

31. Defendants exploited decades of existing consumer trust in the Sure brand by selling the Product contaminated with a benzene concentration level well above the 2 ppm FDA concentration limit, thus subjecting unwitting consumers to dangerous levels of a known carcinogen.

32. Defendants represented to consumers that Sure Antiperspirant was safe and effective for everyday use. Although Sure Antiperspirant was found to contain benzene concentration well above the FDA limit, Defendants did not list benzene among the active or inactive ingredients anywhere on its website, and nothing on the Sure Antiperspirant product label otherwise insinuates, states, or warns that it contains benzene.

33. Defendants' antiperspirant Product is a drug which was adulterated under 21 U.S.C. § 351(a)(1) based upon the presence of benzene.

34. Defendants' antiperspirant Product is a drug which was misbranded under 21 U.S.C. § 352(a) based upon the presence of benzene.

35. The Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a), 21 U.S.C. § 352(a).

36. As alleged herein, Defendants have violated the FDCA and consumer protection statutes.

37. Defendants engaged in fraudulent, unfair, deceptive, false, misleading, and/or unlawful conduct stemming from their omissions surrounding benzene contamination affecting the Product. No reasonable consumer, including Plaintiff, would have purchased the Product had they known of the material omissions of material fact regarding the presence of benzene. Accordingly, Plaintiff

---

[6] *Id.*
[7] *Id.*

suffered injury in fact and lost money as a result of Defendants' misleading representations and omissions and did not receive the benefit-of-the-bargain.

38. Plaintiff's injury is underscored by the fact that numerous other products offering the same therapeutic benefit at comparable prices existed that were not contaminated with benzene.

## PLAINTIFF'S FACTUAL ALLEGATIONS

39. Plaintiff purchased and used the Sure Antiperspirant deodorant regularly for many years, beginning approximately in 2005. Plaintiff purchased and used daily Sure Unscented Antiperspirant Aerosol (6.0 oz) and, as such, purchased and used the recalled Sure Unscented Antiperspirant Aerosol (6.0 oz) with the UPC code 00883484002278.[8]

40. The last time Plaintiff purchased the Sure Antiperspirant was in or around October 2020. Plaintiff purchased Sure Antiperspirant from a variety of retail stores including Rite Aid, CVS, and Target.

41. Upon information and belief, Defendants received proceeds from the payment for the sale of Sure Antiperspirant.

42. Defendants knew or should have known that the Product was not safe for its intended use and could cause users of the product, such as Plaintiff, to sustain injury.

43. Nowhere on the packaging did Defendants disclose that the Product contained benzene at the time of purchase.

44. At no time was Plaintiff warned by Defendants of any of the hazards related to benzene exposure or the risk of developing leukemia posed by using the Product in the normal, foreseeable, and ordinary daily use.

45. If Plaintiff had been aware of the existence of benzene in the Product, and/or the risk of

---

[8] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/tcp-hot-acquisition-llc-dba-hrb-brands-issues-voluntary-nationwide-recall-sure-and-brut-aerosol

7

developing leukemia from using the Product, he would not have purchased it. He would instead purchased other safer alternatives in existence and available on the market.

46. As a direct and proximate result of Plaintiff's usage of Sure Antiperspirant deodorant, Plaintiff was exposed to benzene.

47. Plaintiff began feeling adverse health effects on or around September 2020. Plaintiff began treatment on roughly December 3, 2020 for what would later be diagnosed on January 21, 2021 as Myelofibrosis. Plaintiff's physician attributed the Myelofibrosis to benzene exposure.

48. Plaintiff's exposure to benzene came from his use of the Sure Antiperspirant deodorant which was manufactured, produced, sold and/or supplied by Defendants and thus, the Product was a proximate cause of his Myelofibrosis.

49. Plaintiff suffered, physically, mentally, and emotionally as a result of his disease. Plaintiff has incurred medical expenses.

50. On January 10th, 2023, an autopsy report stated that Plaintiff's cause of death was due to issues stemming from myelodysplastic syndrome.

51. In sum, Plaintiff's death was directly caused by Defendant's actions and omissions.

## CAUSES OF ACTION

### COUNT I
### Negligence

52. Plaintiff incorporates herein each allegation set forth above.

53. Defendants negligently and recklessly manufactured, marketed, distributed and/or supplied Plaintiff with Sure Antiperspirant to which he was exposed. These products contained benzene.

54. Defendants owed a duty to users of their products, breached that duty, and negligently failed to use ordinary care by failing to eliminate the benzene contained in the Product they supplied to Plaintiff and which were used by Plaintiff.

8

55. Defendant also owed a duty to users of their products, breached that duty, and negligently failed to use reasonable care in that they failed to adequately warn of the presence of benzene in the products, and failed to adequately warn of the harm associated with exposure to benzene.

56. Defendants knew or should have known that the Product was defective and poisonous to Plaintiff.

57. It was foreseeable to Defendants that Plaintiff and other users of the Product would be exposed to the Product through ordinary and intended use.

58. Defendants failed to adequately warn Plaintiff, through labeling or otherwise, of the presence of benzene and of the dangers of using said product.

59. Defendants failed to adequately test their products to ascertain their dangerous propensities.

60. As a direct and proximate result of the Defendants' negligence, Plaintiff used Defendants' Product and was exposed to dangerous levels of benzene, and developed Myelofibrosis, thereby suffering a severe and permanent injury.

61. As a direct and proximate result of Defendants' acts or omissions, Plaintiff suffered numerous painful injuries, including Myelofibrosis, and incurred numerous medical expenses, past and future.

## COUNT II
**Strict Liability**

62. Plaintiff repeats and re-alleges the allegations above as if set forth herein.

63. Defendants manufactured, sold, supplied, and/or were in the business of selling Sure Antiperspirant Deodorant to which Plaintiff was exposed. This Product was defectively designed and unreasonably dangerous at the time they were sold, in that they contained dangerous levels of benzene, deviated in their construction or quality from the specifications or planned output in a

manner that rendered them unreasonably dangerous, and were not accompanied by adequate warnings of the presence of benzene or the risk of harm associated with exposure to benzene.

64. As a direct and proximate result of Defendants' acts or omissions, Plaintiff suffered numerous painful injuries, including Myelofibrosis and suffered damages from medical expenses, past and future.

## COUNT III
### Gross Negligence

65. Plaintiff incorporates herein each allegation set forth above.

66. The actions and inactions of all the Defendants, and/or alternatively the employees or agents of Defendants, and their predecessors-in-interest, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in the damages sustained by Plaintiffs. More specifically, Defendants, and/or alternatively the employees or agents of Defendants, and their predecessors-in-interest, whether taken separately, or together, consciously and/or deliberately engaged in wantonness and/or malice with regard to their Product and end-users of their Product, including Plaintiff.

67. Defendants had actual awareness of the extreme degree of risk associated with benzene and exposure to benzene from Defendants' products, and nevertheless proceeded with conscience indifference suffered damages to the rights, safety, and welfare of Plaintiff by failing to act to minimize or eliminate these risks. Therefore, Defendants were grossly negligent and should be held liable for punitive and exemplary damages to Plaintiff.

68. As a direct and proximate result of Defendants' acts or omissions, Plaintiff suffered numerous painful injuries, including Myelofibrosis, and suffered damages from medical expenses past and future.

## COUNT IV

**Breach of Warranty**

69. Plaintiff hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

70. Defendants knew or had reason to know of the intended use of the Product and expressly and impliedly warranted that said Product would be reasonably fit and safe for their reasonably foreseeable use.

71. Defendants warranted that said Product was of merchantable quality and free from defect of design, composition, and other defects.

72. Plaintiff relied upon said warranties and representations of the Defendants in the utilizations of the Product.

73. Defendants breached warranties given to Plaintiff in that said Product contained benzene and were sold and delivered in a dangerous, defective and unsafe condition, which defects permitted and/or caused said substances to seriously and permanently cause injuries to Plaintiff while he used said product in a foreseeable manner.

74. As a direct and proximate result of Defendants' acts or omissions, Plaintiff suffered numerous painful injuries, including Myelofibrosis, and suffered damages from medical expenses, past and future.

## COUNT V
### Negligent Misrepresentation

75. Plaintiff hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

76. At the times herein mentioned, Defendants were engaged in the business of preparing, formulating, manufacturing, analyzing, developing, testing, inspecting, packaging, labeling, advertising, merchandising, selling, and/or distributing the aforesaid Product.

77. At the times herein mentioned, Defendants distributed the Product to Plaintiff.

78. Defendants represented that the Product was safe.

79. Defendants misrepresented to Plaintiff, and the general public, their knowledge about the presence of benzene and propensities of the products to cause injuries such as those sustained by Plaintiff.

80. In reliance on these misrepresentations, Plaintiff purchased and used the Product in the manner and purpose intended as represented by Defendants.

81. Defendants' misrepresentations, actions, and omissions deprived the public and persons, such as Plaintiff, the opportunity to choose whether or not to expose themselves to the dangers of aforesaid Product.

82. As a direct and proximate result of Defendants' acts or omissions, Plaintiff suffered numerous painful injuries, including Myelofibrosis, and suffered damages from medical expenses, past and future.

## COUNT VI
## WRONGFUL DEATH

83. Plaintiff incorporates all paragraphs as if fully set forth herein.

84. Plaintiff Ancel Bowlin is deceased.

85. Plaintiff's death was caused by Defendant's wrongful acts and omissions. But for Defendant's wrongful acts and omissions, Plaintiff would not have become ill with myelofibrosis which caused Plaintiff's death according to his doctor.

86. There are distributees of Plaintiff's estate that have suffered pecuniary loss by reason of Plaintiff's death.

87. There has been appointment of a personal representative of the decedent.

88. As a result of Defendants' actions and omissions, Plaintiff has suffered losses.

## COUNT VII
### Conscious Pain and Suffering

89. Plaintiff incorporates all paragraphs as if fully set forth herein.

90. Due to Defendant's actions, Plaintiff suffered injury in that he became ill with myelofibrosis, and ultimately passed away as a result.

91. Myelofibrosis caused pain and suffering to Plaintiff while Plaintiff was conscious.

92. Plaintiff suffered from this pain and suffering for nearly three years due to his condition which was caused by Defendant's actions and omissions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A. For an order declaring the Defendant's conduct violates the causes of action referenced herein;

B. For an order finding in favor of Plaintiff on all counts asserted herein;

C. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

D. For prejudgment interest on all amounts awarded;

E. For an order of restitution and all other forms of equitable monetary relief;

F. For injunctive relief as pleaded or as the Court may deem proper; and

G. For an order awarding Plaintiff their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of

any and all claims in this Complaint and of any and all issues in this action so triable as of right.

Dated:  December 11th, 2023                Respectfully submitted,


BY: */s Matthew Segal*
Matthew B. Segal, Esq.
**SEGAL LAW FIRM, P.C.**
950 Third Avenue, 11th Floor
New York, NY 10022
(P) (646) 810-3337
(F) (212) 355-9000
msegal@segal-lawfirm.com

-AND-

**POULIN | WILLEY | ANASTOPOULO, LLC**
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
32 Ann Street
Charleston, SC 29403
Phone: (803) 222-2222
Email: paul.doolittle@poulinwilley.com
           blake.abbott@poulinwilley.com